**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | **CRIMINAL ACTION** |
| | ) | **No. 09-10092-PBS** |
| FERMIN GUEVARA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

**March 26, 2015**

Hennessy, M.J.

Proceeding *pro se*, Defendant Fermin Guevara has filed a motion to vacate pursuant to 28

U.S.C. § 2255.  (Docket #208).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and an Order referring the

petition to me, (Docket #213), I recommend that Guevara's motion be denied.

## I.    Factual Background

On appeal, the First Circuit Court of Appeals found the following facts to be supported

by the record:

> Guevara regularly traveled from Boston to Peru to visit family and friends.  While
> in Peru in November 2008, he was introduced to Patricia Lecaros-Velasquez[1], an
> interior designer who had worked as a paid informant for both the Drug
> Enforcement Administration ("DEA") and the equivalent Peruvian drug agency.
> Lecaros-Velasquez testified that the mutual friend who introduced them did not
> know that she was a drug informant, and the meeting was not set up to discuss
> drug dealing.  The friend, however, had told Lecaros-Velasquez that he had once
> lived with Guevara in Boston and that drugs had been sold from the house where
> they lived.
>
> In their first meeting, at the Haiti Restaurant in Miraflores, Guevara told Lecaros-
> Velasquez that he had traveled to Peru to find a supplier for "chickens" and
> "animals," which Lecaros-Velasquez understood as coded references to drugs.
> She offered to introduce Guevara to a supplier, and Guevara then made a phone
> call to his boss, whom he called "Peluche."  Lecaros-Velasquez also spoke briefly

---

[1] Lecaros-Velasquez is referred to as "Cathy" in both Guevara's motion and the United States' response.

with Peluche, later identified as Victor Jaramillo-Arezia ("Victor"), who asked when she could "come up" to the United States so they could discuss "interesting things." At the end of the meeting, Guevara gave Lecaros-Velasquez his phone number and later gave her Victor's as well.

Guevara and Lecaros-Velasquez met again at the Haiti Restaurant on January 31, 2009. By that time, Lecaros-Velasquez had contacted Peruvian authorities, who conducted surveillance and videotaped the meeting while she secretly made an audio recording. The pair were joined by a third individual, introduced to Guevara as Lecaros-Velasquez's associate "Pedro," whom she said was closer to the source of the cocaine. In fact, Pedro was another paid government informant. Lecaros-Velasquez told Guevara that she had spoken with Victor by phone, and Guevara responded, "Yes, he's my partner."

The trio then discussed setting up a drug dealing operation in which Guevara and Victor would regularly buy cocaine in Peru for sale in Boston. Although the word "cocaine" was never used in the conversation, there is no dispute that it was the subject of their lengthy exchange. Guevara initially told Lecaros-Velasquez that, "over there we, in our area we move fifty (50) or more animals," which Lecaros-Velasquez understood as an assertion that he and Victor could sell fifty kilograms of cocaine in the Boston area. Later in the conversation, Guevara said that they could handle fifty "animals" weekly, but they would need delivery to New York or Boston. He warned that "we'll be checking each animal, one at a time," because "[a]ny work we don't like, we throw back." The check was best done upon delivery, he explained, "because sometimes along the way you don't move it, someone else moves it and it has happened in Medellin, that has happened." The implication was that checking upon delivery was necessary because the product shipped was not always the product delivered.

Before getting the enterprise fully underway, Guevara, proposed a small transaction "[w]ith one (1) animal, two (2), three (3), whatever there is," to "break the ice" and "[t]o gain trust" in the relationship. He assured the others that he would stay in Peru "[u]ntil the deal is closed," but urged them to act quickly so it could happen before his planned departure in a few days. In a call to Victor, Guevara secured the okay for "size 24," referring to the $24,000-per-kilogram price that Pedro had just offered. . . .

A third meeting was scheduled for February 3, also at the Haiti Restaurant, but Guevara failed to appear. When Lecaros-Velasquez eventually reached him by phone after repeatedly calling, Guevara said he was not coming because he was drinking. Lecaros-Velasquez called Victor, who said he had also not spoken to Guevara "because I called him and he isn't answering." Victor confirmed the $24,000 price. Lecaros-Velasquez had no subsequent interactions with Guevara about the drug operation, thereafter dealing only with Victor.

Sometime in February, Boston DEA agents were alerted to the planned cocaine importation enterprise by a DEA office in Peru, and they set up a reverse sting operation. A DEA Task Force officer posing as an associate of Lecaros-Velasquez, and using the name "Mario," contacted Victor to make arrangements to supply the Peruvian cocaine. On February 13, the officer, Detective Luis Rodriguez of the Chelsea (Massachusetts) Police Department, met with Victor and another individual in the parking lot of the South Bay Shopping Center in Dorchester. The men sitting in Rodriguez's car, agreed to a transaction of ten kilograms at a price of $24,000 per kilo, and further agreed that they would be in touch again when the cocaine was ready for delivery. At the conclusion of the meeting, Victor and the third man, identified only as "Don Miguel," exited Rodriguez's vehicle and got into a cab registered to Guevara.

In a phone call on February 23, Rodriguez and Victor arranged to meet the following day in a Wendy's parking lot in East Boston. Rodriguez reported that he would be bringing the "ten keys for the apartments," code for the ten kilos of cocaine. The next day, Victor and Rodriguez met at the Wendy's lot, but then agreed to move the transaction to a Home Depot parking lot in Saugus, Massachusetts, where there were no security cameras. Guevara dropped Victor off at Wendy's, but did not participate in the conversation.

Later the same day, with a law enforcement surveillance team videotaping the encounter, Victor arrived at the Home Depot accompanied by Alexander Lopera and Guevara, the latter having driven the men in his taxi. Victor entered Rodriguez's vehicle carrying a red backpack, but the men left the car and entered the store after Victor expressed concern about transferring the backpack full of cash in the vehicle. A few minutes later, Victor handed Rodriguez the backpack as they walked up an aisle in the store. Guevara and Lopera approached as Rodriguez, who was carrying a concealed audio recorder, stood at the end of the aisle inspecting the backpack's contents – a plastic bag containing bundles of cash wrapped in rubber bands. Victor introduced Lopera as his brother and Guevara as his friend. Rodriguez testified that the four men then discussed the details of the cocaine transfer, agreeing that Rodriguez would stay with Victor while Lopera got into the vehicle that would be bringing the drugs so he could check on the quantity and quality of the cocaine. Rodriguez acknowledged, however, that the conversation that took place in Guevara's presence did not specifically refer to either a money exchange or drug quantity and quality, but focused solely on who would be leaving the parking lot with whom and in which car.

The four men existed the Home Depot together and walked toward an undercover vehicle driven by Task Force Officer Jaime Cepero, whom Rodriguez had summoned while the men were in the store. Ten wrapped blocks shaped to resemble kilograms of cocaine had been placed in a hidden compartment in the back of the vehicle. From the driver's side, Rodriguez, Victor, and Guevara looked into the backseat, where the hidden compartment had been opened, and Guevara then immediately started walking back to his taxi. Rodriguez and Victor

headed toward Rodriguez's vehicle, while Lopera remained standing on the passenger side of Cepera's vehicle. Moments later, Guevara, Victor, and Lopera were arrested. The Task Force officers seized $80,020 from the red backpack.

United States v. Guevara, 706 F.3d 38, 40-43 (1st Cir. 2013).

## II.    **Procedural History**

On February 24, 2009, Guevara was arrested along with co-defendants Victor Jaramillo-Arezia and Alexander Lopera. (Docket entry on 2/24/09). An indictment against the three men was filed on April 1, 2009, charging them with conspiracy to both possess with intent to distribute and to distribute cocaine, in violation of 21 U.S.C. § 846, and attempted possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846. (Docket #9). Jaramillo-Arezia pled guilty to the charges against him. (Docket entry on 9/8/10). Guevara and Lopera were tried jointly by jury beginning on January 24, 2011. (Docket entry on 1/24/11). A jury verdict was entered on February 1, 2011, finding both defendants guilty on both charges. (Docket #144). On August 17, 2011, Guevara was sentenced to fifty months' custody, three years of supervised release, and a $200 special assessment. (Docket entry on 8/17/11). Supervision commenced on August 1, 2014. (Docket #22).

On August 30, 2011, Guevara filed a notice of appeal. (Docket #180). In his appeal, Guevara asserted that the district court's conspiracy instruction was inadequate and that the court erred in failing to instruct the jury on the defenses of withdrawal and entrapment. Guevara, 706 F.3d at 40. The First Circuit affirmed Guevara's conviction on January 28, 2013. (Docket #195). Guevara filed the instant motion to vacate pursuant to 28 U.S.C. § 2255 on November 4, 2013 in which he seeks an evidentiary hearing. (Docket #208). The United States filed its opposition to the motion on March 26, 2014. (Docket #218).

## III. Guevara's Habeas Petition

Guevara's motion to vacate asserts eleven identifiable grounds for relief: (1) Guevara's trial counsel was ineffective for failing to file a motion to dismiss for Speedy Trial Act violations; (2) Guevara's trial counsel was ineffective for failing to file a motion to exclude evidence of Guevara's interactions with Lecaros-Velasquez; (3) Guevara's trial counsel was ineffective for failing to expose Lecaros-Velasquez's alleged perjury; (4) Guevara's trial counsel was ineffective for failing to investigate whether the District of Massachusetts was the proper venue; (5) Guevara's trial counsel ineffectively represented him at the final pretrial conference; (6) the prosecution withheld certain exculpatory information from Guevara's trial counsel in violation of Guevara's Fifth Amendment right to due process; (7) Guevara's arrest was not based on probable cause, and, therefore, testimony about his arrest was improperly admitted; (8) the admission of recordings of Guevara's conversations with Lecaros-Velasquez violated his Fifth Amendment due process rights; (9) the evidence presented against Guevara was either incredible or insufficient; (10) evidence was improperly admitted at the probable cause hearing; and (11) Special Agent Jeffrey Commander's testimony concerning Special Agent McCrory's investigation violated Guevara's Sixth Amendment confrontation rights. (Docket #208).

## IV. Standard of Review

Title 28 U.S.C. § 2255 enables a prisoner in custody to move the court that imposed his sentence to vacate, set aside, or correct the sentence if it was "(1) imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998). The defendant bears the burden of establishing the need for relief, by a preponderance of the evidence, in each of these circumstances. Id.; Barrett v. United States, 965

F.2d 1184, 1186 (1st Cir. 1992). "This includes the burden of showing that [he is] entitled, if [he] claim[s] it, to an evidentiary hearing." United States v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978); Barrett. 965 F.2d at 1186.

"An evidentiary hearing is not required where the section 2255 petition, any accompanying exhibits and the record evidence 'plainly [reveal] . . . that the movant is not entitled to relief . . . .'" Barrett, 965 F.2d at 1186 (quoting Rule 4(b), Rules Governing § 2255 Proceedings) (alterations in original). "[S]ummary dismissal is appropriate when the section 2255 petition '(1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" Id. (quoting DiCarlo, 575 F.2d at 954-55). "In other words, a '[section] 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible.'" United States v. McGill, 11 F.3d 223, 226 (1st Cir. 1993) (quoting Shraiar v. United States, 736 F.2d 817, 818 (1st Cir. 1984)).

## IV.    Discussion

###    A.    Ineffective Assistance of Counsel

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must prove that counsel's representation fell below an objective standard of reasonableness and that the deficiencies were prejudicial. Strickland v. Washington, 466 U.S. 668, 687-88 (1984).

Judicial review of counsel's performance is highly deferential, and there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. "The Sixth Amendment guarantees [only] reasonable competence, not perfect advocacy judged with the benefit of hindsight." Yarborough v. Gentry, 540 U.S. 1, 8

(2003). "It is only where, given the facts at the time, counsel's choice was so patently unreasonable that no competent attorney could have made it, that the ineffective assistance prong is satisfied." <u>Knight v. Spencer</u>, 447 F.3d 6, 15 (1st Cir. 2006) (quotation omitted).

The second prong of the <u>Strickland</u> test requires petitioner to show that counsel's deficient performance resulted in "prejudice," that is, that "counsel's errors were so serious as to deprive the [petitioner] of a fair trial, a trial whose result was reliable." <u>Strickland</u>, 466 U.S. at 687. Stated differently, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

Guevara asserts that his trial counsel was ineffective for failing to move for dismissal of the indictment due to an alleged violation of the Speedy Trial Act, for failing to file a motion to suppress the evidence of Guevara's relationship with Lecaros-Velasquez, for failing to expose Lecaros-Velasquez's alleged perjury, for failing to investigate the court's jurisdiction, and for failing to properly represent Guevara at the final pretrial conference. (Docket #208). As discussed below, the undersigned finds Guevara's arguments meritless.

1. The Speedy Trial Act

Guevara argues that his trial counsel rendered ineffective assistance by failing to file a motion to dismiss because of two alleged violations of the Speedy Trial Act: (1) that the indictment against Guevara was returned more than thirty days after his first appearance, and (2) that the trial commenced more than seventy days after his arrest. (Docket #208 at 3).

Pursuant to the Speedy Trial Act, an information or indictment must be filed within thirty days from the defendant's arrest. 18 U.S.C. § 3161(b). The Speedy Trial Act also requires a

criminal defendant's trial to begin within seventy days of his indictment or initial appearance, whichever happens later. 18 U.S.C. § 3161(c)(1). Several periods of delay are excluded in the calculation of these two time periods pursuant to 18 U.S.C. § 3161(h).

Guevara was arrested on February 24, 2009. (Docket entry on 2/24/09). The indictment against him was filed on April 1, 2009, thirty-six days after his arrest. (Docket #9). Guevara and his co-defendants made their initial appearance on February 25, 2009. (Docket entry on 2/25/09). At that time, the United States moved for detention of the defendants and a continuance. (Id.). The case was continued to March 6, 2009 for a probable cause and detention hearing. (Id.). The hearing was rescheduled for March 9, 2009, by agreement of the parties, to accommodate the court. (Docket entries on 3/4/09 and 3/9/09). The hearing was held on March 9 and continued to March 11, 2009, at which time the court took the matter under advisement. (Docket entries on 3/9/09 and 3/11/09). A memorandum and decision of probable cause was entered on March 13, 2009. (Docket #6).

The period of time from February 25, 2009 until March 13, 2009 is excludable under 18 U.S.C. § 3161(h)(1)(D), which excludes "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of the motion" and § 3161(h)(1)(H), which excludes "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement of the court." Therefore, there were twenty non-excludable days between arrest and indictment, well under the thirty days permitted by the Speedy Trial Act. Thus, there was no violation of 18 U.S.C. § 3161(b).

Guevara's claim that his trial was untimely also fails. Several orders were issued between Guevara's indictment and trial that excluded periods of time. On April 10, 2009, the

court entered an order excluding the time between April 10, 2009 and April 24, 2009. (Docket #15). On May 27, 2009, the court entered an order excluding the time between April 24, 2009 and July 7, 2009. (Docket #24). On July 13, 2009, the court entered an order excluding the time between July 7, 2009 and September 15, 2009. (Docket #27). On September 18, 2009, the court entered an order excluding the time between September 15, 2009 and November 16, 2009. (Docket #33). On January 13, 2010, the court entered an order excluding the time between November 16, 2009 and February 12, 2010. (Docket #46). On February 18, 2010, the court entered an order excluding the time between February 12, 2010 and the next status conference which was held on May 18, 2010. (Docket #46; Docket entry on 5/18/10). On May 18, 2010, the parties agreed that the time between May 18, 2010 and October 25, 2010 would be excluded. (Docket #50). On October 20, 2010, Guevara's counsel assented to motions to move the trial to January 24, 2011, and to exclude the time from October 25, 2010 until January 24, 2011. (Docket #76, 77). The trial began on January 24, 2011. (Docket entry on 1/24/11). Thus, the time period from April 4, 2009 until trial began on January 24, 2011, was excludable under 18 U.S.C. § 3161 either by agreement of the parties or by an order entered by the court. Guevara does not argue that these time periods should not have been excluded; instead, he asserts that the seventy day time period began on February 25, 2009, the day of his first appearance in court. (Docket #208 at 3). However, the statute clearly provides that the trial "shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date occurs last." 18 U.S.C. § 3161(c)(1) (emphasis added). Because the indictment was filed after Guevara's initial appearance, the seventy day time period in this case began to run on the date of the indictment.

There were three days between April 1, 2009, the date of the indictment, and April 4, 2009, when the exclusion period began. This is well within the seventy days allowed by 18 U.S.C. § 3161(c)(1).

As a review of the record clearly demonstrates that there was no violation of the Speedy Trial Act, Guevara's trial counsel's failure to file a motion to dismiss based on a violation of that act – a motion to dismiss that would have been doomed to failure – was not objectively unreasonable. See Strickland, 466 U.S. at 687-88.

2.    Evidence of Guevara's relationship with Lecaros-Velasquez

Guevara asserts that his trial counsel was ineffective for failing to file a motion to suppress evidence of his relationship with Lecaros-Velasquez, i.e. taped conversations between Guevara and Lecaros-Velasquez and testimony by Lecaros-Velasquez regarding the investigation of Guevara. (Docket #208 at 4). Guevara states that, had his trial counsel made such a motion, Guevara's indictment would have been dismissed due to insufficient evidence. (Id.). Guevara asserts that this evidence should have been suppressed under Federal Rules of Evidence 401, 402, and 403. (Id.).

Only relevant evidence is admissible. Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and [] the fact is of consequence in determining the action." Fed. R. Evid. 401. The challenged evidence was clearly relevant; it established that Guevara intended to bring drugs into the United States and established that Guevara was part of a conspiracy to distribute drugs. These are precisely the charges levied against Guevara. Thus, any motion to suppress this evidence pursuant to Rule 401 would have failed.

Even where evidence is relevant, the court may exclude it "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Guevara asserts that, because the conversations between himself and Lecaros-Velasquez took place outside of the United States, their admission, and Lecaros-Velasquez's testimony concerning them, unfairly prejudiced and mislead the jury and were subject to suppression pursuant to Rule 403. (Docket #208 at 4). Guevara fails to provide any authority for why events that take place outside of the United States are inherently prejudicial or would mislead the jury, nor is this court aware of any such authority. This bald assertion is not sufficient to establish a facially valid claim under 18 U.S.C. § 2255. Barrett, 965 F.2d at 1186.

Relevant evidence is also excludable if provided for by the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. Fed. R. Evid. 402. Guevara argues that the conversations between himself and Lecaros-Velasquez, and Lecaros-Velasquez's testimony concerning these conversations, should have been excluded pursuant to Federal Rule of Evidence 402 because they took place outside of the jurisdiction of the United States and because Lecaros-Velasquez was an agent of a foreign government. (Docket #208 at 4).

The admission of conversations that took place outside of the jurisdiction of the United States does not on its own violate the Constitution or any statute. The Fourth Amendment exclusionary rule only applies to actions taken by foreign governments if the "foreign officers acted as agents for their American counterparts" or the conduct of the foreign government "shocks the judicial conscience." United States v. Valdivia, 680 F.3d 33, 51 (1st Cir. 2012). At

the time of the recorded conversations in January 2009, Lecaros-Velasquez was acting on behalf of the Peruvian government; it was not until February of that year that the DEA was alerted to the investigation. Guevara, 706 F.3d at 40-41. Thus, the Fourth Amendment exclusionary rule is not applicable as the Peruvian government was not acting as an agent for the DEA. Further, there is nothing in the record indicating that the Peruvian government's conduct would possibly "shock the judicial conscience." Contrary to Guevara's arguments, Title III of the Omnibus Crime Control and Safe Streets Act of 1968 is also not applicable as it does not govern the actions of foreign agents. See United States v. Delmonaco, Crim. No. 5-20-B-W, 2005 U.S. Dist. LEXIS 18762, at *17 n.1 (D. Me. Aug. 31, 2005) (citing United States v. Maturo, 982 F.2d 57, 60 (2d Cir. 1992) (holding that Title III does not apply outside of the United States)).

Because the contested evidence was clearly admissible under Rules 401, 402, and 403, trial counsel did not act unreasonably in failing to file a motion to suppress evidence of Guevara's relationship with Lecaros-Velasquez. See Strickland, 466 U.S. at 687-88.

3.      Alleged Perjury of Lecaros-Velasquez

Guevara argues that his trial counsel was ineffective for failing to expose Lecaros-Velasquez's false testimony, and that, if he had done so, the jury would have acquitted Guevara. (Docket #208 at 6). Guevara asserts that trial counsel's failure to expose false testimony violated his Fifth Amendment due process rights, and that trial counsel had an obligation under the Sixth Amendment to subpoena a witness to rebut Lecaros-Velasquez's testimony.[2] (Id.).

Guevara asserts that Lecaros-Velasquez gave false testimony that Guevara initiated the conversation regarding drugs, when in fact, it was Lecaros-Velasquez who initiated the drug dealing conversation. (Id.). However, the First Circuit conclusively found that "Guevara . . .

---

[2] Guevara also asserts that the prosecution improperly coached Lecaros-Velasquez. (Docket #208 at 6). The undersigned finds this assertion lacking any basis in fact.

was the one who first raised the subject of drugs." Guevara, 706 F.3d at 47.  Because the record clearly establishes that Lecaros-Velasquez did not commit perjury, Guevara cannot establish any Fifth Amendment violation, and, therefore, cannot demonstrate that his trial counsel acted ineffectively in failing to expose any such perjury.  See Strickland, 466 U.S. at 687-88.

Guevara has also failed to establish that his trial counsel acted ineffectively when he did not subpoena a witness to contradict Lecaros-Velasquez's testimony.  "The decision whether to call a particular witness is almost always strategic, requiring a balancing of the benefits and risks of the anticipated testimony."  Lema v. United States, 987 F.2d 48, 54 (1st Cir. 1993).  The First Circuit has previously found that undermining the prosecution's witness, rather than calling a contradictory witness, is a legitimate defense strategy.  Id.  Guevara has failed to demonstrate that his trial counsel's failure to subpoena a witness to rebut Lecaros-Velasquez was the result of ineffective assistance instead of a tactical decision and, thus, has failed to overcome his burden. See Knight, 447 F.3d at 16-17.

4.      Venue

Guevara asserts that his trial counsel rendered ineffective assistance when he failed to investigate whether the prosecution was properly venued in Massachusetts.  (Docket #208 at 8). Guevara states that the sole evidence of his association with the drug conspiracy was his conversations with Lecaros-Velasquez in Peru and, therefore, the court did not have venue to hear this case, pursuant to 18 U.S.C. § 3237(a).[3]  (Id.).  Guevara argues that, had trial counsel

---

[3] 18 U.S.C. § 3237(a) provides:

> Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

> Any offense involving the use of the mails, transportation in interstate or foreign commerce, or the importation of any object or person into the United States is a continuing offense and, except as

investigated the court's venue and then presented it to court, Guevara's indictment would have been dismissed.  (Id.).

"The touchstone of a conspiracy is an agreement to do an unlawful act;" each co-conspirator need not know of or participate in every act in furtherance of the conspiracy.  United States v. Martinez-Medina, 279 F.3d 105, 113 (1st Cir. 2002).  "Venue is sustained either by proof that the conspiracy or an overt act occurred in the district."  United States v. Uribe, 890 F.2d 554, 558 (1st Cir. 1989) (quotation omitted) (finding that telephone calls to and from Rhode Island and a drug interchange between co-conspirators in Rhode Island were sufficient to establish venue in Rhode Island although the defendant never had actual or constructive possession of the contraband within the district).

The First Circuit found that Guevara and Lecaros-Velasquez discussed setting up a drug dealing operation in which Guevara and Jaramillo-Arezia would regularly buy cocaine in Peru for sale in Boston.  Guevara, 706 F.3d at 41.  The First Circuit also found that Guevara placed calls to Jaramillo-Arezia in the United States regarding these plans.  Id. at 40-41.  Guevara was present when Jaramillo-Arezia attempted to consummate the plan in Saugus, Massachusetts.  Id. at 42-43.  The First Circuit's factual findings demonstrate that there was sufficient evidence to connect Guevara to the conspiracy, and the conspiracy to the District of Massachusetts.  Thus, any failure on trial counsel's part to investigate the venue of the action was neither unreasonable nor prejudicial to Guevara.  See Strickland, 466 U.S. at 687-88

otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce, mail matter, or imported object or person moves.

5.    Pretrial Conference

Guevara argues that his trial counsel failed to properly represent him at the final pretrial conference. (Docket #208 at 4-5). Guevara lists three bases for this argument: first, he was prejudiced because trial counsel failed to achieve the sequestration of certain witnesses; second, he was prejudiced because statements made by Jaramillo-Arezia were excluded, thereby depriving Guevara of the ability to impeach those statements; and third, he was prejudiced because he had a right to have the drug quantity determined by the jury. (Id.). As explained below, the undersigned finds that Guevara's trial counsel did not render ineffective assistance at the pretrial conference.

a. Sequestration

Guevara states that, due to ineffective representation by his trial counsel, three of the United States' witnesses, Lecaros-Velasquez, Detective Rodriguez, and Special Agent Commander were allowed to remain in the courtroom for the duration of the trial. (Id.). Contrary to Guevara's assertions, the court granted the motion to sequester witnesses. (Docket #93). Thus, as his argument relates to witnesses Lecaros-Velasquez and Rodriguez, it is clearly contradicted by the facts and is without merit. However, it appears that the parties stipulated that the sequestration order did not apply to Commander, the prosecution's case agent. (Docket #208-1 at 3-4).

Federal Rule of Evidence 615 requires the trial court, at the request of a party, to sequester a witness, expressly providing an exception for "an officer or employee of a party which is not a natural person designated as its representative by its attorney." Fed. R. Evid. 615(b). Under this exception, the district court may allow the government's chief investigating officer to remain in the courtroom throughout the proceedings, even when he is expected to

testify.  United States v. Machor, 879 F.2d 945, 953 (1st Cir. 1989).  Thus, pursuant to the Federal Rules of Evidence, Commander was allowed to remain in the courtroom throughout the trial.

Beyond the fact that the rules specifically allow for Commander's presence in the courtroom, Guevara cannot show that his presence caused Guevara any prejudice.  Guevara argues that he was prejudiced because Commander's presence in the courtroom allowed him to conform his testimony to that of the other witnesses thereby precluding Guevara's trial counsel from impeaching Commander's testimony.  (Docket #208 at 5).  This argument ignores the fact that Commander was the first witness called and was not recalled at a later point in the trial.  (Docket #186).  Thus, his presence in the courtroom during the testimony of the prosecution's other witnesses, witnesses who were not privy to Commander's testimony, did not prejudice Guevara.  As trial counsel's actions were neither unreasonable nor caused prejudice, Guevara has failed to demonstrate that counsel rendered ineffective assistance.  See Strickland, 466 U.S. at 687-88.

### b. Co-Defendant's Guilty Plea and Statements

Guevara claims that his trial counsel rendered ineffective assistance by failing to argue against co-defendant Lopera's motion to exclude co-defendant Jaramillo-Arezia's guilty plea and out-of-court statements.  (Docket #208 at 5).  Guevara's trial counsel was silent on the matter and the prosecution had no objection.  (Docket #208 at 5).  The court allowed the motion.  (Id. at 5-6).

Jaramillo-Arezia's testimonial out-of-court statements are hearsay under Federal Rule of Evidence 801(c) and were properly excluded pursuant to Federal Rule of Evidence 802.  See also Crawford v. Washington, 541 U.S. 36, 68 (2004) (holding that the Confrontation Clause

generally prohibits the admission of testimonial out-of-court statements against a criminal defendant). A guilty plea is also properly excluded under Rules 801 and 802. See United States v. Cabrera-Rivera, 583 F.3d 26, 33-34 (1st Cir. 2009) (holding that admission of out-of-court confessions of co-defendants was improper where such out-of-court confessions would emphasize the guilt of the alleged accomplices). Guevara has failed to show that his trial counsel's actions were ineffective; failing to object to the exclusion of inadmissible evidence is not unreasonable. See Strickland, 466 U.S. at 687-88.

As the United States correctly points out, had trial counsel decided that Jaramillo-Arezia's testimony would help Guevara's case, trial counsel could have called Jaramillo-Arezia as a witness. However, Guevara has not shown that Jaramillo-Arezia's testimony would have been helpful. Indeed, as Guevara concedes, Jaramillo-Arezia's out-of-court statements implicated Guevara in the conspiracy. (Docket #208 at 5). Additionally, as Jaramillo-Arezia had yet to be sentenced, he may have asserted his privilege against self-incrimination. (See Docket entry on 6/30/11). In any case, the choice of witnesses at trial is generally considered part of trial strategy. Lema, 987 F.2d at 54. Guevara has failed to demonstrate that the decision not to call Jaramillo-Arezia was an unreasonable strategy, especially given that his testimony was likely to inculpate Guevara in the conspiracy. (Docket #208 at 5).

c. Drug Quantity

Guevara argues that the jury should have determined the quantity of drugs involved in the conspiracy for which he was charged and convicted. (Docket #208 at 5). Guevara states that his trial counsel argued against jury determination of the issue, but the court held that the jury would determine the quantity of drugs. (Id.). The jury did, in fact, determine the quantity of drugs involved. (Docket #144). Hence, Guevara cannot show that any errors of his trial counsel, if

they did indeed occur, caused him prejudice, a necessary demonstration in order to prevail on a claim of ineffective assistance of counsel. <u>Strickland</u>, 466 U.S. at 687.

B.     Other Claims Presented

On pages nine and ten of his motion, Guevara details numerous other alleged constitutional violations. (Docket #208 at 9-10). Most are repetitive of his ineffective assistance of counsel claims. The remaining claims can be categorized into the following groups: claims of Fifth Amendment violations, claims concerning the sufficiency and credibility of evidence at trial, claims concerning the probable cause hearing, and a Sixth Amendment confrontation claim.

1.     Fifth Amendment Claims

a. <u>Brady</u> Claim

In his motion, Guevara argues that the prosecution withheld certain exculpatory information from trial counsel, presumably in violation of <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963) ("[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). Prior to trial, Guevara moved the court for an order compelling the prosecution to disclose all exculpatory evidence concerning Lecaros-Velasquez. (Docket #123). The Court allowed the motion prior to trial, (Docket #130), and the prosecution agreed to provide the additional evidence. (Docket #185 at 5-11). Guevara does not specify any additional evidence that should have been turned over nor does he allege that the information the court determined should be provided was not produced. Guevara fails to state sufficient facts or allegations to state a claim under <u>Brady</u>.

b. Guevara's Arrest

Guevara asserts that his arrest was not based on probable cause and, for that reason, testimony at trial regarding his arrest was admitted in violation of the Fifth Amendment. (Docket #208 at 9). However, the record demonstrates that Guevara's arrest was based on sufficient probable cause; therefore, his claim fails.

"Probable cause exists when 'the facts and circumstances within [the police officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense.'" United States v. Jorge, 865 F.2d 6, 9 (1st Cir. 1989) (quoting United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987) (alterations in the original). As determined by the First Circuit, at the time of Guevara's arrest, there was evidence that he had discussed setting up a drug dealing operation with Lecaros-Velasquez and Jaramillo-Arezia which would involve buying cocaine in Peru for sale in Boston. Guevara, 706 F.3d at 41. At the time of the arrest, Guevara had driven Lopera and Jaramillo-Arezia to a site in the Boston-area where they attempted to exchange money for drugs. Id. at 42. Guevara saw both the kilogram blocks and the money. Id. at 42-43. At the time of his arrest, the evidence known to law enforcement officers was sufficient to allow the officers to reasonably believe that Guevara was presently involved in a conspiracy to possess and distribute cocaine.

c. Admission of Recordings

Guevara identifies several instances in the record where his trial counsel pointed out issues with recordings made of Guevara's conversations with Lecaros-Velasquez. (Docket #208 at 9-10). Guevara states that some of the conversations were not admitted in chronological order, there was no chain of custody admitted in connection with these tapes, and that the tape on

which Lecaros-Velasquez identified Guevara's voice was undated.  (Id.).  Guevara argues that the admission of the recorded conversations violated his Fifth Amendment due process rights. (Id. at 10).

Contrary to Guevara's argument, the recordings and Lecaros-Velasquez's testimony concerning them were properly admitted.  As correctly described by the United States, Guevara is effectively arguing that, because there were issues with the credibility and reliability of the recordings, they should have been excluded.  These issues were brought to the jury's attention through the examination of Lecaros-Velasquez.  "[C]redibility determinations are the province of the jury" and the court "ordinarily decline[s] invitations to second-guess jury decisions about the credibility of particular testimony."  United States v. Tierney, 266 F.3d 37, 40 (1st Cir. 2001) (internal quotation omitted).  Any issues with the evidence were a matter of weight, not admissibility, and thus the evidence was properly admitted.  See United States v. Gonzalez-Ramirez, 561 F.3d 22, 29 (1st Cir. 2009) (citing Cummings v. Std. Register Co., 265 F.3d 56, 65 (1st Cir. 2001) ("while shortcomings in certain testimony might reduce its probative value, they do not necessarily render it inadmissible)); United States v. Burnett, 579 F.3d 129, 132 (1st Cir. 2009) (holding that district court did not err by allowing a government witness to testify about seeing defendant in possession of a small baggy containing white substance without establishing that substance was cocaine; fact that the substance was not proven to be cocaine went to the weight of the evidence, not its admissibility).

2.      Sufficiency and Credibility of Evidence at Trial

Guevara raises several claims regarding the sufficiency and credibility of the evidence against him.  A number of these claims revolve around Lecaros-Velasquez's testimony:  the fact that Lecaros-Velasquez was paid for her work in the investigation by the United States

Department of Justice and the Peruvian equivalent, that Lecaros-Velasquez's testimony exonerated Guevara, that Lecaros-Velasquez's testimony failed to establish a nexus between Guevara and the crime of which he was convicted, and that Lecaros-Velasquez was not a credible witness and her testimony must be discredited. (Docket #208 at 10). Guevara also raises the following arguments concerning the sufficiency and credibility of the evidence: that the prosecutor stated at sentencing that he had no reason to believe that Guevara had lied, that transcripts of a meeting at the South Bay Shopping Plaza on February 13, 2009 do not support a sufficient nexus between Guevara and the crime of which he was convicted, that there was insufficient evidence to show that any conspiracy resulted in any drug transaction, and that the Court noted that there was sufficient evidence to prove conspiracy. (Id. at 9-10). Guevara also argues that Lopera's counsel's challenge to the accuracy of Rodriguez's recognition of Lopera's voice violated his due process rights. (Id. at 9).

"[A] sufficiency challenge is a tough sell. [The defendant] must show that, viewing the evidence and reasonable inferences in the light most favorable to the prosecution, no rational jury could have convicted him." United States v. Polanco, 634 F.3d 39, 44-45 (1st Cir. 2011) (citations omitted). The court "cannot re-weigh the evidence or second-guess the jury's credibility decisions." Id. at 45. Thus, the court must review Lecaros-Velasquez's testimony, and indeed that of all the witnesses, in the light most favorable to the prosecution. In that light, Lecaros-Velasquez's testimony established that Guevara participated in a plan to smuggle drugs from Peru into the United States. Other evidence at trial showed that Guevara was present when his co-defendants attempted to exchange money for drugs, that he drove his co-defendants to the place of attempted exchange, that he saw the kilogram blocks and money, and that he was present for discussions regarding the exchange. Lopera was within his rights to challenge an

identification of his own voice, and Guevara has failed to show how this in any way violates his due process rights.  It was within the purview of the jury to determine whether that identification was credible.  Guevara has failed to show that no rational jury could have convicted him, and, therefore, his claim of insufficiency of the evidence fails.

3.     Probable Cause Hearing

Guevara asserts that no evidence was presented at the probable cause hearing of an agreement between the Chelsea Police Department and the DEA that authorized Detective Rodriguez of the Chelsea Police Department to participate in the federal investigation.  (Docket #208 at 10).  As correctly noted by the United States, Guevara has failed to state why this is relevant and to indicate what prejudice he suffered as a result.  However, as recognized by Guevara, Rodriguez was employed as a task force officer.  (Docket #208 at 10).  At the probable cause hearing, DEA Special Agent Israel Joseph testified these task force officers are from local police departments who are in agreement to give the DEA police officers to work with the DEA in enforcing DEA's jurisdiction.  (Docket #73 at 66).  Thus, the record shows that Rodriguez was operating with proper federal authority when he arrested Guevara.

Guevara also argues that certain evidence presented at his probable cause hearing lacked certification and, thus, was improperly prejudicial.  (Docket #208 at 10).  The Federal Rules of Evidence, except as they relate to privilege, do not apply at a preliminary examination in a criminal case.  Fed. R. Evid. 1101(d)(3).  Hence, Guevara's argument lacks merit.

4.     Sixth Amendment Claim

Guevara asserts that Commander's testimony concerning Special Agent McCrory's investigation violated his right to confront his accusers under the confrontation clause of the

Sixth Amendment.[4]  (Docket #208 at 9).  Guevara asserts that McCrory was required himself to testify to his investigation.  (Id.).  Presumably, Guevara is arguing that Commander's testimony constituted hearsay, thereby violating his Sixth Amendment right to confront the witnesses against him.  McCrory is a DEA agent who was Commander's primary contact in the Lima, Peru DEA office during the investigation.  (Docket #186 at 49, 85).

The Sixth Amendment provides that an accused has "the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  Admitting a witness' out-of-court testimonial statements when that witness is available to testify violates the accused's Sixth Amendment right of confrontation, but not when those statements are offered for a purpose "other than establishing the truth of the matter asserted."  Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004).  Contrary to Guevara's argument, Commander's testimony did not constitute hearsay.  Commander testified that, during the course of this investigation as head of the task force, he was briefed by McCrory on the situation in Peru, including information concerning the informant, the meetings and calls between Guevara and Lecaros-Velasquez, and was also sent a video and audio recording by McCrory of a meeting between Lecaros-Velasquez and Guevara.  (Docket #186 at 85-90).  Commander never testified as to McCrory's out-of-court testimonial statements and, therefore, there was no violation of Guevara's Sixth Amendment rights.

C.    Evidentiary Hearing

Guevara has failed to carry his burden of demonstrating, by a preponderance of the evidence, not only that he is entitled relief under 28 U.S.C. § 2255, but also that he is entitled to an evidentiary hearing.  See DiCarlo, 575 F.2d at 954.  Guevara's motion plainly reveals that he is not entitled to relief; therefore, no hearing is necessary.  Barrett, 965 F.2d at 1186.

---

[4] In his motion, Guevara refers to the Special Agent as "McCray."  (Docket #208 at 9).

## V.    Conclusion

For the foregoing reasons, I recommend that Guevara's motion to vacate pursuant to 28 U.S.C. § 2255 (Docket #208) be denied.[5]

/s/David H. Hennessy
David H. Hennessy
United States Magistrate Judge

---

[5]  The parties are hereby advised that, under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court **within fourteen (14) days** of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objections are made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).